IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

IN RE:

ALAN BRESLIN AXELROTH
SUSAN ANN AXELROTH

    DEBTORS

GREENTREE SERVICING, LLC

    PLAINTIFF

VS

ALAN BRESLIN AXELROTH
SUSAN AXELROTH,
ANNE WARREN,
ADMIRAL FUNDING LLC,
BANK OF AMERICA,
BIRMINGHAM ENDODONTICS, LLC,
COPELCO CAPITAL A/K/A COPELCO LEASING CORP.,
ALABAMA DEPARTMENT OF REVENUE,

    DEFENDANTS
and

UNITED STATES OF AMERICA,

    INTERVENOR.

BK 06-71266-CMS-11

AP 06-70040-CMS

## MEMORANDUM OF DECISION

This matter came before the court on Motion for Distribution of Interpled Funds filed by Alan Breslin and Susan Axelroth (the "Debtors") (BK Doc. 150, AP Doc. 35) and Objection to Motion for Distribution of Interpled Funds filed by Anne Warren ("Warren") (AP Doc. 39). The parties have agreed that said actions shall be treated as a motion for summary judgment to determine Warren's rights in the excess proceeds. This court has considered the documentary evidence and the oral arguments of counsel in the context of applicable law. The court finds that Warren has no rights to the excess proceeds.

**FINDING OF FACT**

On August 7, 2007 the parties submitted a stipulation of facts (AP Doc. 45) with respect to the Debtors' Motion. Pursuant to said stipulation, the Court makes the following finding of facts. The Debtors owned a piece of property located at 3529 Mill Springs Road, Mountain Brook, Alabama. This property was subject to a first mortgage to Coats and Company ("Coats") and a second mortgage to Greentree Servicing, LLC ("Greentree"). On May 17, 2000 a notice was filed in the Jefferson County Probate Court satisfying the Coats' mortgage. Said Discharge of Mortgage was recorded at Book 200006, Page 1087, and a copy of said document is attached to the parties' submission of stipulated facts. On April 8, 2005 an affidavit was filed stating that this discharge was recorded in error. Said affidavit was recorded in Jefferson County Probate Court Book 2000505, Page 3278, and a copy of this affidavit is attached as Exhibit B to the parties' stipulation.

The Debtors defaulted on their payments to Greentree and, as a result, a notice of mortgage foreclosure sale was published on August 20, 27 and September 3, 2005. See Exhibit C to the parties' stipulation. The foreclosure sale was held on September 23, 2005, and Greentree's foreclosure agent announced that "the Greentree foreclosure was likely subject to a first mortgage and the Greentree mortgage was the only mortgage being foreclosed on that day."

Warren was the highest bidder at the foreclosure sale with a bid price of $178,000.00. After the payment of the Greentree second mortgage of approximately $40,000.00 and expenses of sale, there remained approximately $128,000.00 in proceeds. That amount has now increased to approximately $133,000.00 due to accumulated interest.

After the Greentree foreclosure, the Coats mortgage was noticed for foreclosure and, in order to protect her interest, Warren purchased the property at the Coats sale on December 1, 2005 for an additional $270,001.00.

Per the parties' stipulation Warren, in reliance on the May 17, 2000 satisfaction of the Coats mortgage, understood that the Greentree mortgage was the first mortgage and did not know that this satisfaction had been withdrawn by the later affidavit. The parties stipulated that Warren would not

have paid the amount she paid at the Greentree foreclosure sale but for her mistake in fact as to the status of the Coats mortgage.

Greentree filed this action originally in Jefferson County Circuit Court and interpled the $128,000.00 in excess funds, naming Warren and others as party defendants. The action was removed to this court. The Debtors filed a motion to distribute the interpleader funds (AP Doc. 35) which the parties have agreed will be treated as a motion for summary judgment to determine Warren's rights in the excess proceeds.

## CONCLUSIONS OF LAW

Warren asked the court to impose a constructive trust on what was the approximate $128,000.00 excess after the payment of the second mortgage. She asserts that under Alabama law this constructive trust should be imposed in order to avoid inequity or unjust enrichment. Alabama law does determine her rights in these proceeds.

Warren points the court to two Alabama cases involving constructive trusts. In the case of Beasley v. Mellon Financial Services Corporation, 569 So. 2d 389 (Ala. 1990), an action was filed to reform a deed in lieu of foreclosure or to impose a constructive trust upon real estate. The facts in the Beasley case showed that a house had been built on one parcel of land but the construction loan had been on an adjacent parcel of land. A deed in lieu of foreclosure had been executed to the lienholder on what was supposed to be the vacant parcel, but which in fact contained the house. The mortgage holder on what was supposed to be the house brought an action under the theory of reformation and constructive trusts. The trial court found that there had been a mutual mistake and "the Court finds that it is significant that ... when Beasley accepted a deed in lieu of foreclosure from Powell, she was admittedly aware that the home had not been built on the parcel of property which had previously been released from her mortgage.... From the testimony presented at trial, it is clear that Powell was a party to a mutual mistake...". Beasley, 569 So. 2d at 392.

The court in Beasley went on to discuss the imposition of constructive trusts on the property in question. The court noted that a constructive trust can be imposed to prevent unjust enrichment.

Equity may impose a constructive trust on property in favor of one beneficially

> entitled thereto when another holds title to the property by fraud, commission of wrong, abuse of a confidential relationship, or any other form of unconscionable conduct. See American Family Care, Inc., supra, citing Keeton, Law on Trusts, 210 (5th ed. 1949); 4 Pomeroy Equity Jurisprudence, § 1053 (5th ed. 1941); and Walsh on Equity, § 106 (1930). Equity may also impose a constructive trust on property in favor of one beneficially entitled thereto against a person who in any way, against the rules of equity and good conscience, either has obtained or holds and enjoys legal title to property that in justice that person ought not to hold and enjoy. See American Family Care, Inc., supra, citing 3 Scott on Trusts § 462.1 (1939) and Restatement of Restitution § 160, Comment a (1937).
> A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.

Beasley, 569 So. 2d at 394-395.

The court in Beasley noted that Beasley was aware of the mistake when she accepted the deed in lieu of foreclosure and that she had not paid anything for the house, whereas the mortgage company had advanced the funds for the construction of the house and to allow her to retain the house would allow her to become unjustly enriched at the expense of the mortgage company. The court therefore affirmed the trial court's imposition of a constructive trust.

In the case of Davis v. Barnfield, 833 So. 2d 58 (Ala.Civ.App. 2002), two siblings brought an action against a third sibling alleging that they had provided funds for the purchase of real estate which had only been purchased in the name of the third sibling. Again an action was commenced to impose a constructive trust on the property. The court again noted that a constructive trust is a creature of equity which is to be imposed not because of the intention of the parties, but to prevent unjust enrichment. "A constructive trust may be found only where a fraud or an inequity demand a result that may be had at law." Davis, 833 So. 2d at 64 (quoting Rau v. Rau, 429 So.2d 593 (Ala.Civ.App.1982)). "It must be inequitable to allow the one who holds it to retain the property." Davis, 833 So. 2d at 64 (quoting Brothers v. Fuller, 607 So.2d 135 (Ala. 1992)).

Alabama case law on constructive trust does not address circumstances involving public foreclosures as is the case before the court. It is instructive however to review Alabama cases in which mistakes of fact are alleged to have occurred concerning mortgage foreclosures. The case of Chrysler First Financial Services Corporation v. Bolling, 608 So. 2d 734 (Ala. 1992) involved a

mortgage foreclosure. In the case, Bolling had executed a mortgage to Chrysler and there was a fire insurance policy on the structure located on the property. A default in the mortgage resulted in a foreclosure sale being scheduled for May 29, 1990. Chrysler had requested a property value analysis which was received on April 11, 1990 and showed that the value of the property was $7,500.00. Foreclosure notices began running on May 7, 1990 and a foreclosure was held on May 29, 1990. Unbeknownst to Chrysler, the house was destroyed by fire on May 24, 1990. At the foreclosure sale, Chrysler was the highest bidder and bought the real estate for an amount equal to its principal, interest, attorneys fees, and costs of foreclosure. The insurance company filed an interpleader action and paid to the clerk the insurance policy proceeds of $10,000.00 and asked the court to determine whether the property owner or mortgage holder was entitled to the proceeds. Chrysler filed an action asking that the court use its equitable powers to set aside the foreclosure sale and restore Chrysler and the property owner to the positions they had prior to the foreclosure sale. Chrysler alleged that it was unaware of the fire loss at the time of the foreclosure sale. The Supreme Court of Alabama found that Chrysler was diligent in its efforts to obtain information about the property and that it had obtained the value analysis less than four weeks before it began publication of the foreclosure notice and that the fire occurred only five days before the mortgage foreclosure.

> Our second consideration is whether equity allows the foreclosure sale to be set aside when neither party had knowledge of the loss. A court of equity can set aside a foreclosure sale where there is a mutual mistake of fact. Stuart v. Strickland, 203 Ala. 502, 83 So. 600 (1919); see Federal Land Bank of St. Paul v. Edwards, 262 Mich. 180, 247 N.W. 147 (1933). In Federal Land Bank of St. Paul, the fire that destroyed the property occurred one day before the foreclosure sale. After determining that the mortgagee's lack of knowledge was not the result of a lack of due diligence, the Court concluded that if the foreclosure sale was not set aside, the Court would be conferring an "unconscionable advantage" upon the mortgagor. Id.

Chrysler, 608 So. 2d at 737.

The court in Chrysler determined that equity required the foreclosure sale be set aside.

Chrysler also cited Stuart v. Strickland, a 1919 Supreme Court of Alabama case. Stuart held "However, the general rule as to mutual mistake is subject to important limitations, for example, as that the mistaken fact must be material and such as the party complaining could not by reasonable diligence have obtained knowledge of when he was put on inquiry. If by reasonable diligence he

could have obtained such knowledge, equity will not relieve him, since that would be to encourage culpable negligence...." Stuart, 83 So. at 603. In this case, the mortgage foreclosure agent announced that the property may be subject to a first mortgage and the probate records of Jefferson County reflected that there was a first mortgage and that it had been of record for five months prior to the foreclosure sale. The Chrysler case also cited a case from the Supreme Court of Michigan, Federal Land Bank of St. Paul v. Edwards, which was also an action to set aside a foreclosure sale when a fire had destroyed a building on the property foreclosed. In the Federal Land Bank case, the fire had occurred the day before the foreclosure sale and the mortgagee was unaware of the destruction of the building. The court noted that the mortgagee's ignorance of the loss was not due to "want of ordinary diligence." Federal Land Bank, 262 Mich. at 182. "Plaintiff, without blame, laboring under a mistake of fact, bid in the property at the mortgage sale in a manner wholly unintended had the truth been known, and it is no more than plain justice, in a case like this, where the court can restore the status quo, without detriment to any one, and no interests of third parties are involved, for equity to grant relief from such a unilateral mistake of fact." Federal Land Bank, 262 Mich. at 182.

Warren was on constructive notice four months before the notice of foreclosure began running and five months before the foreclosure sale that the first mortgage had been satisfied in error. Under Alabama law, the proper recording of an instrument is "'conclusive notice to all the world of everything that appears from the face' of the instrument." Haines v. Tonning, 579 So. 2d 1308, 1310 (Ala. 1991) (quoting Christopher v. Shockley, 199 Ala. 681, 682, 75 So. 158, 158 (1917)). Further, "purchasers of real estate are 'presumed to have examined the title records and knowledge of the contents of those records is imputed [to them].'" Haines, 579 So. 2d at 1310 (quoting Walker v. Wilson, 469 So. 2d 580, 582 (Ala. 1985)). Consequently, anyone who acquires an interest in real property is put on "constructive notice by our system of recordation of previously filed interests in the same property." Prestwood v. Weissinger, 945 So. 2d 458, 462 (Ala. Civ. App. 2005).

Warren also is not asking the court to set aside the foreclosure, but rather is asking the court for a constructive trust on the proceeds in excess of the first and second mortgage. This was a public foreclosure sale and the stipulation of facts indicates that Warren was the highest bidder. There were

other bidders who were willing to pay more than the approximate $40,000.00 second mortgage amount for this subject property. Warren does not propose to rebid the property, but rather to receive all the excess funds. If Warren receives all the excess funds, then other creditors of the Debtors will have also lost any right to look to the value of the real estate in excess of the first and second mortgage to satisfy their claims.

The foreclosure agent announced that there may be a first mortgage and the public records indicated that there in fact was an allegation that a first mortgage still existed. No one misrepresented the status of the mortgages on the property and no allegation was made that there was a misrepresentation. There was no evidence that Warren exercised due diligence in determining the status of the title to the property prior to her bidding at the foreclosure sale. Case law in Alabama suggests that the appropriate remedy for a mistake, if there had been a proper exercise of due diligence, would be to ask the equity court to set aside the foreclosure, not to ask for a refund.

## CONCLUSION

For the reasons stated above, this court finds that Warren is not entitled to a constructive trust on the proceeds in excess of the first and second mortgages. Therefore, Warren does not have any interest in the excess funds. Should she have a claim against the Debtors, said claim will be treated as a general, unsecured claim against the bankruptcy estate.

**DONE and ORDERED** this September 14, 2007.

/s/ C. Michael Stilson

C. Michael Stilson

United States Bankruptcy Judge